**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**EUGENE EDWARD BANGHART,** :

    **Plaintiff** :

    **v.** :

**COMMISSIONER OF SOCIAL** :
**SECURITY,**

    **Defendant** :

     :

**CIVIL ACTION NO. 1:04-0920**

**(CONNER, D.J.)**
**(MANNION, M.J.)**

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Supplemental Security Income, ("SSI"), under Title XVI of the Social Security Act ("Act"). 42 U.S.C. §§1381-1383f.

Based upon a review of the record, it is recommended that the plaintiff's appeal from the decision of the Commissioner of Social Security, (Doc. No. 1), be **DENIED.**

## I. Procedural Background

The plaintiff filed his current application for SSI benefits on August 19, 2002, alleging an inability to work since March 20, 1993, due to a combination of impairments, including right eye blindness, reflux disease, asthma,

sinusitis, an affective disorder, and a history of hiatal hernia. (TR. 11).

After his claim was denied (TR. 94-97), the plaintiff's application eventually came on for a hearing before an administrative law judge, ("ALJ"), on September 3, 2003. (TR. 25-56). The plaintiff was represented by counsel at his hearing before the ALJ; however, the plaintiff is currently proceeding *pro se*. During the hearing, the plaintiff, by and through his counsel, amended his onset date of disability from March 28, 1993 to August 19, 2002[1]. (TR. 11, 26; Doc. 13, p. 4).

At the hearing, the ALJ heard the plaintiff's testimony as well as the testimony of Herbert Fellerman, a medical expert ("ME") and Marianne Starosta, a vocational expert ("VE"). (TR. 23-56).

On October 15, 2003, the ALJ issued a decision in which he found that the plaintiff had not engaged in substantial gainful activity at any time

---

[1] In February 1994, plaintiff filed an application for disability insurance benefits. In October 1995, an ALJ denied plaintiff's DIB application and the Appeals Council denied his request for review.

On November 26, 1997, plaintiff filed a second application for disability insurance benefits. However, plaintiff was last insured for DIB purposes on June 30, 1999. On August 16, 1999, an ALJ denied plaintiff's application and the Appeals Council denied plaintiff's request for review and plaintiff commenced a civil action in this court for judicial review of the ALJ's decision. (See Civil Action No. 3:01-2442). By order dated July 30, 2002, the district court dismissed plaintiff's appeal and affirmed the ALJ's decision. (Doc. No. 13, p. 3).

Plaintiff is precluded from alleging a disability onset date earlier than August of 2002 because of the doctrines of *Res Judicata* and Administrative finality bar. (TR. 12, 62).

subsequent to his alleged onset date of disability; the plaintiff's impairments placed significant restrictions on his ability to perform basic work-related activities; the plaintiff did not have an impairment, or combination of impairments, severe enough to meet or equal the criteria for establishing disability under any applicable listed impairment set forth in Appendix I, Subpart P, Social Security Administration Regulations No. 4; the plaintiff was a forty-three (43) year old younger individual who had a twelfth grade education; he retained the functional capacity to perform his past relevant work as a draftsman; he could perform other similarly-situated work which would require working in a normal office environment free of excess dust, odors and fumes, with no exposure to extremes of temperature and humidity; the plaintiff had not been under a disability, as defined in the Social Security Act, as amended, at any time relevant thereto.

At step two of the sequential evaluation process, the ALJ decided that plaintiff's affective disorder and hiatal hernia are not severe impairments. (TR. 12-13). The ALJ based these findings on medical evidence that the plaintiff was not receiving formal or structured counseling for his mental complaints and that his hiatal hernia had been successfully removed. (TR. 13). The plaintiff's right eye blindness, reflux disease, asthma and sinusitis were found to be severe impairments under the regulations, but not severe enough to meet or equal a listed impairment. (TR. 12).

Plaintiff filed a request for review of the ALJ's decision. (TR. 6-7). On

April 13, 2004, the Appeals Council concluded that there was no basis upon which to grant his request for review. (TR. 3-5). Thus, the ALJ's decision stood as the final decision of the Commissioner.

Currently pending before the Court is the plaintiff's appeal of the decision of the Commissioner of Social Security filed on April 27, 2004. (Doc. No. 1).

**II. Disability Determination Process**

A five step process is required to determine if an applicant is disabled for purposes of social security disability insurance.  The Commissioner must sequentially determine:  (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work; and (5) whether the applicant's impairment prevents the applicant from doing any other work.  See 20 CFR § 416.920 (2000).

As stated above, the instant action was ultimately decided at the fourth step of the process when the ALJ determined that the plaintiff was not under a disability as defined in the Social Security Act, at any time through the date of this decision, because "he retained the functional capacity to perform his past relevant work as a draftsman." (20 C.F.R. § 416.920(e))  (TR. 16).

**III. Evidence of Record**

The plaintiff was born on December 5, 1959, and was forty-three (43) years old at the time of the ALJ's decision. (TR. 12, 27, 105, 122). His past work experience includes employment as a draftsman. (TR. 12, 32, 126). He has a twelfth grade education. (TR. 12, 16, 54, 58).

The medical evidence of record establishes that on January 2, 2002, the plaintiff visited Andrew Fabian, M.D., a family physician. (TR. 475). At that time, Dr. Fabian reported that Plaintiff had a rash but otherwise his physical examination was within normal limits. Plaintiff was prescribed Lamisil cream and was scheduled to return for a follow-up visit six months later. (TR. 212-13; Doc. 13, p. 4).

On January 23, 2002, Thomas R. Damiano, M.D., reported that a CT scan of Plaintiff's paranasal sinuses showed evidence of extensive prior nasal and sinus surgeries, some persistent disease in his paranasal sinuses without an air-fluid level, and a probable small bony defect between the posterior ethmoidal region and orbital apex on the right. (TR. 419-20; Doc. 13, p. 5).

On February 4, 2002, Dr. Fabian reported that Plaintiff complained of chronic sinusitis, and acute pharyngitis; his lungs were clear and his cardiovascular system was normal. (TR. 208; Doc. 13, p. 5). On March 27, 2002, Susan Borys, M.D., reported that Plaintiff continued to complain of sinus and phlegm problems. He was prescribed Prednisone. (TR. 205; Doc. 13, p. 5).

5

On June 19, 2002, Dr. Fabian reported that Plaintiff's sinuses improved in response to the Prednisone treatment. Dr. Fabian noted that Plaintiff was "doing ok" and that his main problem at the time was symptoms of acid reflux (TR. 200-01); his physical examination was within normal limits. (TR. 202; Doc. 13, p. 5).

On July 16, 2002, Paul L. Sutton, M.D., noted that Plaintiff had a history of chronic, steroid-dependant asthma, chronic sinusitis, and right-eye blindness since 1993. (TR. 185; Doc. 13, p. 5).

On September 17, 2003, Mark L. Hepner, O.D., reported that he had provided routine eye care for the plaintiff since July, 1999, and confirmed that he (plaintiff) was legally blind in his right eye. (TR. 515; Doc. 13, p. 5).

On July 24, 2002, David J. Dula, M.D., reported that Plaintiff went to the emergency department and complained that he had lost his breath while playing tennis. Dr. Dula noted that Plaintiff was alert, fully oriented, and had appropriate speech. Dr. Dula further noted that Plaintiff had mild wheezing and normal cardiac enzymes. Plaintiff's chest x-ray was normal (TR. 183; Doc. 13, p. 6) however, he was referred to the cardiac unit for further testing. (TR. 184). A July 25, 2002, exercise echocardiography was normal, and there was no evidence of coronary disease or ischemia. (TR. 189, 416; Doc. 13, p. 6).

On August 21, 2002, Dr. Fabian reported that Plaintiff complained of a loss of breath or a "few seconds" of wheezing with exertion, such as working

around his house or playing tennis. Dr. Fabian noted that Plaintiff had no recent visual changes, no chest pain, no coughing, no sputum production, and no musculo-skeletal or neurological abnormalities. Dr. Fabian further noted that Plaintiff had no chronic changes in mood, affect or sensorium. (TR. 196; Doc. 13, p. 6). Dr. Fabian also noted that plaintiff had the classic "reflux and extraesophageal symptoms (sinus, asthma, sore throat, hoarseness)." (TR. 197).

On September 26, 2002, John A. Baxter, M.D., reported that a chest x-ray showed that the plaintiff had some evidence of chronic lung disease, but no active or acute disease, or pleural pathology. (TR. 187, 415; Doc. 13, p. 6).

On October 10, 2002, Salman Qayum, M.D., reported that the Plaintiff complained of gastritis and that an upper gastrointestinal (GI) series showed a small hiatus hernia which had been previously detected on March 21, 1996. (TR. 413; Doc. 13, p. 6).

On October 11, 2002, Oliver Finch, M.D., a state agency internist (TR. 476), reviewed Plaintiff's medical records and opined that he was able to occasionally lift fifty pounds, frequently lift twenty-five pounds, stand/walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Dr. Finch further opined that Plaintiff had an unlimited ability to push/pull, no postural limitations, no manipulative limitations, and no communicative limitations. Dr. Finch opined that Plaintiff's vision was limited

due to his right-eye blindness, and that he should avoid concentrated exposure to extreme cold, heat, fumes, odors, gases, or poor ventilation. (TR. 154-57; Doc. 13, p. 7).

On October 18, 2002, Anthony Petrick, M.D., repaired Plaintiff's hernia with a laparoscopic procedure. Dr. Petrick reported that Plaintiff had clear lungs, normal heart, no neurological abnormalities, normal muscle tone, full motor strength, and a full range of motion throughout. A post-surgery upper GI series showed Plaintiff had no significant abnormalities. (TR. 161-62; Doc. 13, p. 7). During a November 11, 2002, follow-up visit, the plaintiff stated that he was off antacids, and denied any reflux symptoms. (TR. 180; Doc. 13, p. 7).

On October 28, 2002, James Cunningham, Ed.D., a state agency psychologist, reviewed Plaintiff's medical records and opined that he had no severe mental impairment. (TR. 166). Dr. Cunningham reported that Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (TR. 176). Dr. Cunningham opined that Plaintiff's psychological symptoms did not significantly limit his ability to function. (TR. 178; Doc. 13, p. 7).

On January 13, 2003, Dr. Fabian reported that Plaintiff complained of some difficulty swallowing, but that he had less reflux and asthma. Dr. Fabian noted that Plaintiff's heart and lungs were normal, and his head, eyes, ears,

8

nose, and throat (HEENT) were "ok," but for thick mucous. (TR. 192).

On January 30, 2003, Brian P. McKinley, M.D., reported that Plaintiff complained of excess mucous, but that his reflux was well controlled, and he was able to swallow well. (TR. 484; Doc. 13, p. 8).

On February 26, 2003, Leonard M. Delvecchio, M.D., reported that Plaintiff had no reflux symptoms, and that a repeat upper GI series showed his esophagus and stomach were normal. (TR. 483; Doc. 13, p. 8).

On April 2, 2003, Thomas L. Kennedy, M.D., an otolaryngologist, evaluated Plaintiff's sinuses, and complaints of excess phlegm production. Dr. Kennedy noted Plaintiff denied any other nasal or sinus problems. Dr. Kennedy further noted Plaintiff's clinical examination was unremarkable and opined that Plaintiff's chronic sinus disease was inactive, and that he had no significant sinus disease, but merely mild post-nasal drip. (TR. 478; Doc. 13, p. 8).

On April 14, 2003, Dr. Fabian noted that Plaintiff had a history of asthma, chronic rhinitis secondary to allergies, gastroesophageal reflux disease (GERD), anxiety, and right eye blindness, and opined that Plaintiff was disabled. (TR. 477; Doc. 13, p. 9).

On June 10, 2003, Dr. Fabian reported that the plaintiff complained of shortness of breath, gas, and palpitations after exertion. (TR. 492). Dr. Fabian reported however, that but for allergic rhinitis Plaintiff's clinical examination was normal. Plaintiff's eye, ears, nose, mouth, neck, chest, heart, lungs,

abdomen, and extremities were all normal. Dr. Fabian further reported that Plaintiff's asthma and reflux were "ok". (TR. 493). Dr. Fabian also reported that a HOLTER monitor report showed Plaintiff's heart had no significant abnormalities. (TR. 488, 499; Doc. 13, p. 9).

At the hearing before the ALJ, Plaintiff testified that he lived with his mother but spends most days at his girlfriend's house. (TR. 38-39, 44; Doc. 13, p. 9). The plaintiff also testified that he rose from bed at 6:00 a.m., when his girlfriend left for work (TR. 40-41) and that he cared for his cat on a daily basis, and cared for his girlfriend's dog until it died. (TR. 39-40, 134). Plaintiff further testified that he spent the day watching television, and doing household chores. (TR. 40, 46). Plaintiff mowed his girlfriend's lawn, did odd jobs around the house, took out the trash, prepared simple meals, vacuumed, and did laundry. (TR. 135-36).

Plaintiff testified that he lost his breath for short periods approximately twice per day (TR. 52), and that he was not able to go out in public because of his allergies. (TR. 42). Plaintiff, however, admitted that he drove his car most days and that he drives frequently to his girlfriend's house located twenty miles away from his house (TR. 43-44, 135), played with his cat, and played tennis once or twice per week. (TR. 43, 136, 138).

Plaintiff also testified that he had stopped working in 1993 after his right eye became blind as a result of his chronic sinus condition. (TR. 33, 45, 221). Indeed, work history reflected a steady pattern of employment dating back to

1975. (TR. 108-111).

Plaintiff's prescription medications to control his asthma include: Prednisone, Combivent inhaler, Asthmacort, Rhinocort, and Singulair. (TR. 34-37).

The ME reviewed Plaintiff's medical records and testified that none of Plaintiff's impairments, singly or in combination, met or equaled the criteria of a listed impairment. The ME further testified that Plaintiff had "some mild persistent" asthma, but no other significant physical limitation. (TR. 30; Doc. 13, p. 10).

The VE testified that plaintiff's past relevant work as a draftsman was sedentary, semi-skilled work. (TR. 54). The ALJ asked the VE whether Plaintiff would be able to work if he had to work in a "normal office type environment, that is, an area that is free of excess dust, odors, and fumes, or extremes of temperature and humidity." The VE testified that Plaintiff would be able to perform his past relevant work. (TR. 54-55; Doc. 13, p. 10).

The VE also testified that if the ALJ accepted the plaintiff's testimony regarding his subjective complaints, then plaintiff would not be able to return to his past relevant work. (TR. 55).

## IV. Discussion

Plaintiff states generally that his "past and present health conditions which are chronic asthma, sinus rhinitis, and blind in my right eye, loss of

11

breath, and anexity (sic) are disabling and do not permit me to do any substantial gainfull (sic) employment. My health is not conducive to the modern work force." (Doc. No. 12, p. 1).

We interpret this statements as plaintiff's argument that the ALJ's decision that the plaintiff was capable of substantial gainful employment is not supported by substantial evidence. After careful review of the record and for the reasons stated below, we find that the ALJ's findings and his conclusion that plaintiff had the residual functional capacity to perform his past relevant work as a draftsman is amply supported by substantial evidence in the record as a whole.

When reviewing the denial of Social Security Disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552 (1988); *Haranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In denying plaintiff's SSI application, the ALJ considered the medical evidence on the record, the testimony presented at the hearing, and new and material medical evidence that had not been available to the non-examining

state agency consultants. (TR. 13).

The ALJ also considered the plaintiff's subjective complaints and limitations pursuant to 20 C.F.R. §416.929 and Social Security Ruling 96-7p. The ALJ found that the plaintiff overstated his symptoms and limitations because they are not consistent with the medical evidence. (TR. 15).

In accordance with Social Security Ruling 96-6p, the ALJ considered the assessment made by a physician with the Disability Determination Service ("DDS"), who concluded that the plaintiff had the functional capacity to return to perform medium work activity. (TR.14, 166-178).

In his decision, the ALJ considered the plaintiff's impairments according to sections 2.00 et seq. (Special Senses and Speech, Disorders of Vision) and 3.00 et seq. (Respiratory System) (TR. 13).

The ALJ considered as well Dr. Fabian's opinion that the plaintiff was disabled due to his asthma, chronic rhinitis secondary to allergies, GERD, anxiety, and right eye blindness. However, the ALJ afforded "little probative value" to Dr. Fabian's opinion because it was "not supported by the preponderance of the medical evidence". In rejecting Dr. Fabian's opinion, the ALJ compared it to Dr. Kennedy's assessment that the plaintiff had no significant sinus disease. (TR. 14, 478). The ALJ also considered Dr. Fabian's own treatment notes from June 10, 2003, indicating that the Plaintiff's acid reflux and asthma were "ok." (TR. 493).

The Commissioner states that Dr. Fabian's disability opinion is

13

contradicted by his own notes and those of other physicians such as Dr. Sutton and Dr. Dula. (Doc. 13, p. 12). On July 16, 2002, Dr. Sutton examined the Plaintiff. Based on the Plaintiff's own statements, Dr. Sutton stated that the plaintiff's pulmonary problems were complex and referred him to a lung specialist. (TR. 186). Dr. Sutton documented that plaintiff was not in acute distress, and that his chest was clear. (TR. 185-186).

The Commissioner also argues that Dr. Fabian's disability opinion is contradicted as well by Dr. Baxter's opinion that there was no evidence of active or acute lung disease during examination. (Doc. 13. P. 12). Dr. Baxter noted that tests results indicated "an element of chronic lung disease" but that there was no evidence of active or acute process. (TR. 187).

Plaintiff stated to have a lifelong asthma condition. (TR. 45). A February 20, 1998, test interpretation revealed that the plaintiff had been diagnosed with "chronic lung changes with interstitial fibrosis and mild emphysema." (TR. 436). The record also contains the results of diagnostic imaging testing performed on July 24, 2002, which shows "right medial lung base focal, sub-segmental region of atelectasis[2]" and "slight hyper-inflation consistent with the patient's diagnosis of asthma." (TR. 191).

The ALJ also compared Dr. Fabian's opinion with the ME's opinion at

---

[2]   Atelectasis: Decreased or absent air in the entire or part of a lung, with resulting loss of lung volume. Steadman's Medical Dictionary, 27th Ed., p. 161 (2000).

14

the hearing that plaintiff's asthma was under control by the "use of appropriate medication for his respiratory difficulties." (TR. 14).

At the hearing, the ME opined that plaintiff's blindness on his right eye did not meet the criteria of any listed impairment. The ME concluded as well that plaintiff's acid reflux disease had been successfully treated with surgery and treatment.

The Plaintiff does not challenges the ALJ's determination at step two of the sequential evaluation process, as described above, that his affective disorder and hiatal hernia are not severe impairments. Indeed, the record reflects that Plaintiff's hernia was repaired by Dr. Petrick in October 2002. Post surgery examinations showed no significant abnormalities and Plaintiff denied acid reflux symptoms and reported that he was off antacids. (TR. 161-162; 180; Doc. 13, p. 7).

There is no indication on the record that Plaintiff was ever under treatment for a psychological condition. The state agency's psychologist opined that Plaintiff only had mild restrictions in maintaining concentration, persistence and pace, and mild restrictions in social and daily activities. (TR. 176-178).

The Commissioner argues, and we agree, that the ultimate decision of whether the plaintiff is disabled is reserved to the Commissioner. (Doc. 13, p. 11). In Jones v. Sullivan, 954 F.2d 125 (3d Cir. 1991), the court held that the opinions of a treating physician need not be accepted where they are

15

conclusory and unsupported by the medical evidence, or where the opinions are contradicted by the opinions of other physicians, including state agency physicians, who reviewed the findings of the treating physicians and concluded that these findings do not reveal a condition that would preclude gainful employment.

With regards to Plaintiff's asthma condition, the ALJ stated to have relied on the medical evidence provided by the Plaintiff, his testimony at the hearing, and the opinion of the ME and the agency physicians. There is a reference to a pulmonary test on a decision denying plaintiff's November 26, 1997, application for disability benefits. That Decision stated to have considered a pulmonary functioning test that plaintiff underwent on July 30, 1998. (TR. 66). The ALJ in that case stated that, according to the 1998 test, the plaintiff's pulmonary capacity was within normal limits. (TR. 66).

In addition, according to Dr. Fabian, Plaintiff's asthma condition was being successfully treated with conservative treatments such as a Prednisone inhaler. (TR. 200-201). As late as August 2002, Plaintiff reported that he only experienced mild shortness of breath when he plays tennis or performs work around the house. (TR. 196). In reference to the Plaintiff's sinus condition, the ALJ explained that Dr. Kennedy, the otolaryngologist, opined in April 2003 that the disease was inactive. (TR. 478).

The Plaintiff argues that he has been diagnosed with several medical conditions since 1993, thus he is disabled. However, the law is clear that the

existence of a medical condition alone does not demonstrate a disability for purposes of the Act. In disability cases, the issue is not only whether a medical condition exists, but whether it results in a functional disability that prevents the Plaintiff from performing substantial gainful activity. *See Petition of Sullivan*, 904 F. 2d 826, 845 (3d Cir. 1990).

In conclusion, after careful review of the record, it appears that the ALJ's determination that the plaintiff is not disabled is amply supported by substantial evidence.

## V. Conclusion

Based upon the evidence of record, it is recommended that the plaintiff's appeal of the decision of the Commissioner of Social Security (Doc. No. 1) be **DENIED.**

                                                    s/Malachy E. Mannion

                                                    MALACHY E. MANNION
                                                    United States Magistrate Judge

Dated:       August 26, 2005
O:\shared\REPORTS\2004 Reports\04-0920.wpd